## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

Jonathan Wilkinson,

      Plaintiff,

v.                                       Civ. No. 1:20-cv-00783 MIS/KRS

Justin Maese, Walter Chappas,
Keith Tate (d/b/a/ Griffin Transport),
D & M Energy Associates, LLC
(d/b/a D & M Energy and d/b/a
D & M Energy LLC), and
Environmental Services.

      Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Justin Maese's ("Defendant Maese") Motion for Summary Judgment Based on Qualified Immunity (ECF No. 10), Defendant Maese's Motion to Strike Parts of Affidavit of Proffered Expert Witness Brian Keith Wilkinson (ECF No. 26), and the related briefing. ECF Nos. 22, 24, 30, 32.

### BACKGROUND

Plaintiff filed suit in this Court on August 3, 2020, asserting constitutional claims against Defendant Maese pursuant to 42 U.S.C. § 1983, and various tort claims against the remaining Defendants. ECF No. 1. Relevant to the present motion, Plaintiff claims that Defendant Maese performed an unreasonable seizure in violation of the Fourth Amendment, and that he subsequently initiated an unreasonable prosecution.

The relevant facts are as follows.[1] In the early hours of October 30, 2019, New Mexico State Police Patrolman Defendant Justin Maese was on duty in McKinley County. Defendant Maese was driving a fully marked New Mexico State Police patrol vehicle, dressed in his full police uniform, and displaying his official badge of office. ECF No. 10-1 at ¶ 4. At approximately 1:17 a.m., Defendant Maese received a dispatch advising him that a detective from Louisiana, using a GPS signal, had tracked a stolen vehicle to the northwest side of the Pilot truck stop in Jamestown, New Mexico. *Id*. at ¶ 5. The stolen vehicle was described as a gray Dodge Ram pickup truck, Florida license plate IHXS94, hauling a flatbed trailer. *Id*. Dispatch advised Defendant Maese that the vehicle was listed as stolen in the National Crime Information Center ("NCIC") database. *Id*. When Defendant Maese arrived at the Pilot truck stop around 1:34 a.m., he found a Dodge Ram pickup truck matching the vehicle description and license plate number provided by dispatch. The truck was parked in the northwest area of the truck stop and Plaintiff was asleep in the cab. *Id*. at ¶ 6.

At this point the parties' stories diverge in several significant respects. In the present procedural posture, the Court views the facts in the light most favorable to Plaintiff. According to Plaintiff's affidavit, he awoke to loud pounding, opened the vehicle's front passenger door, and was greeted by a flashlight and a drawn pistol and told to exit the vehicle. ECF No. 22-10 at ¶ 18. The following exchange ensued:

Maese – What are you doing in this vehicle?
Wilkinson – Working. I'm working.
Maese – What are you doing in this vehicle tonight?

---

[1] Except as otherwise noted, the material facts are undisputed.

> Wilkinson – I'm working for a company, I'm on my way to Houston.
>
> Maese – Who owns this vehicle? Do you know who owns this vehicle?
>
> Wilkinson – I don't know, I think his name is Alex or something. I've been calling him sir.
>
> Maese – Nope. Sorry. That's incorrect. His name is not Alex or something.
>
> Wilkinson – I don't know. I . . . I believe.
>
> Maese – What don't you know? You're in this vehicle. You don't know who owns it.
>
> Wilkinson – I don't . . . I believe . . . I know the name of—
>
> Maese – Stop! Shut the fuck up!
>
> Wilkinson – Look. I have fuel receipts. I have fuel receipts and Bill of Ladings in the truck and my phone. If you'll allow me to get my phone I can call the guy. I can call who I'm working for and show you receipts.

*Id*. at ¶ 19. Defendant Maese directed Plaintiff to stand in front of his patrol vehicle for a long time while he alternately searched Plaintiff's vehicle and trailer and sat in his patrol vehicle using his phone. *Id*. at ¶ 20. Eventually, Defendant Maese approached and handcuffed Plaintiff. *Id*. at ¶ 21.

While there appears to be some dispute about whether it took place before or after the arrest,[2] the parties agree that at some point Defendant Maese read Plaintiff the *Miranda* warnings and interviewed him more fully about his possession of the truck. *Id*. at ¶ 23; ECF No. 10-1 at ¶ 8. Plaintiff explained that he had been hired to drive the truck and trailer through a response to his Craigslist ad, and that he was in constant contact with the person who hired him. ECF Nos. 22-10 at ¶ 23; 10-1 at ¶ 8. He showed Defendant

---

[2] According to Defendant Maese's version of events, he first questioned Plaintiff and heard the explanation of how he was hired shortly after requesting that Plaintiff exit the vehicle. ECF No. 10-1 at ¶ 7–8. By Plaintiff's account, he was not permitted to give any explanation beyond the exchange detailed above until after they reached the station. ECF No. 22-10 at ¶ 19–23.

Maese text messages between himself and the employer and gave Defendant Maese the employer's phone number. ECF No. 10-1 at ¶ 8. Plaintiff explained that he was hired to transport three "loads" of cargo, but that he had not yet been paid. *Id.* at ¶ 10. When he needed to buy fuel, the employer would send him photos of a company fleet card by text message. However, the card was declined at the fuel stop in Jamestown, New Mexico. *Id.*

After he was transported to the New Mexico State Police office in Gallup, Plaintiff was given an opportunity to call his father, Brian Keith Wilkinson ("Mr. Wilkinson"). ECF No. 22-10 at ¶ 24. Plaintiff explained his situation and gave Mr. Wilkinson the phone number of his employer. Defendant Maese affirms that when he subsequently attempted to call that number, he received a "no longer in service or disconnected" message. ECF No. 10-1 at ¶ 8. However, Mr. Wilkinson's affidavit states that he was able to contact Plaintiff's employer, Defendant Keith Tate, who verified that he had hired Plaintiff to drive the truck for interstate deliveries; denied that he had reported the truck stolen; and said that the report was likely due to a business dispute with his now-former partner. ECF No. 22-9 at ¶ 9. Defendant Tate indicated that he would "take care of the problem," but never followed up with Mr. Wilkinson. *Id.*

After the interview and Plaintiff's phone call to Mr. Wilkinson, Defendant Maese booked Plaintiff into the McKinley County Detention Center. ECF Nos. 10-1 at ¶ 13; 22-10 at ¶ 25. Later that same day Defendant Maese filed a criminal complaint in the McKinley County Magistrate Court, charging Plaintiff with receiving or transferring a stolen vehicle in violation of NMSA 1978, § 30-16D-4(A). ECF No. 22-8 at 1. On November 13, 2019, the case was dismissed. *Id.* at 2.

4

**LEGAL STANDARD**

<u>Summary Judgment</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that threshold is met, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. In applying the summary judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (citation omitted).

<u>Qualified Immunity</u>

The doctrine of qualified immunity protects government officials from suit unless their actions violate a "clearly established" statutory or constitutional right. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the

defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (citation and quotation marks omitted); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 289–90 (2018) ("The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." (internal citations and quotation marks omitted)). Although the plaintiff is not required to identify a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Clearly established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987). But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Cortez v. McCauley*, 478 F.3d 11108, 1115 (10th Cir. 2007)). The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law. *Anderson*, 483 U.S. at 640.

When a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011)). The court may address these two inquiries in any order. *Pearson v.*

6

*Callahan*, 555 U.S. 223, 236 (2009); *McCowan v. Morales*, 945 F.3d 1276, 1282 (10th Cir. 2019). If the plaintiff fails to satisfy either test, the court must grant qualified immunity. *McCowan*, 945 F.3d at 1282 (quoting *Estate of Ceballos v. Husk*, 919 F.3d 124, 1212–13 (10th Cir. 2019)). If the plaintiff succeeds, then—and only then—does the defendant bear the traditional burden of the movant for summary judgment. *Kapinski*, 964 F.3d at 905. In this case the Court will decide the case only on the clearly established inquiry.

**DISCUSSION**

Unreasonable Seizure

Plaintiff first contends that Defendant Maese violated his constitutional rights by arresting him without probable cause. Under the qualified immunity standard, the inquiry before this Court is twofold: (1) whether probable cause existed for Plaintiff's arrest, and (2) whether a reasonable officer, under the circumstances, could have believed that probable cause existed. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

"A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (quoting *Romero*, 45 F.3d at 1476). In evaluating whether an officer had probable cause, the court considers "the facts and circumstances within the officer's knowledge." *Id.* (alterations omitted) (quoting *Fogarty*, 523 F.3d at 1156). In order to receive qualified immunity, the officer need only have "arguable probable cause" to perform the arrest. *See Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("Arguable probable cause

is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists.").

Plaintiff was arrested for Receiving or Transferring Stolen Vehicles or Motor Vehicles in violation of NMSA 1978, § 30-16D-4, which, inter alia,[3] makes it a criminal offense to "[have] in the person's possession any vehicle that the person knows or has reason to believe has been stolen or unlawfully taken." *Id.* § 30-16D-4(A). Plaintiff does not dispute that he had the truck in his possession or that the vehicle was reported stolen.[4] He argues, however, that Defendant Maese lacked probable cause to believe Plaintiff met the statutory scienter requirement, i.e., that he knew or had reason to believe the truck was stolen. He asserts that Defendant Maese violated the Fourth Amendment by ignoring exculpatory evidence in the form of Plaintiff's own statements and explanation, which Plaintiff contends Defendant Maese had a duty to investigate, and the "documents and texts" establishing Plaintiff's legal entitlement to possess the vehicle. *See generally* ECF No. 22. These documents and texts are attached to Plaintiff's Response as Exhibits 1 through 4. *See* ECF Nos. 22-1, 22-2, 22-3, 22-4.

At the time of the arrest, Defendant Maese had knowledge of the following relevant facts: (1) Plaintiff was in possession of a vehicle reported stolen; (2) Plaintiff could not

---

[3] The full text reads as follows:

Receiving or transferring a stolen vehicle or motor vehicle consists of a person who, with intent to procure or pass title to a vehicle or motor vehicle as defined by the Motor Vehicle Code [66-1-1 NMSA 1978] that the person knows or has reason to believe has been stolen or unlawfully taken, receives or transfers possession of the vehicle or motor vehicle from or to another or who has in the person's possession any vehicle that the person knows or has reason to believe has been stolen or unlawfully taken.

NMSA 1978, § 30-16D-4(A). The parties agree, however, that only the provisions of the final clause formed the basis for Plaintiff's arrest.

[4] Plaintiff does dispute that the truck was actually stolen, but acknowledges that Defendant Maese did not know the report was false at the time of the arrest. ECF No. 22 at 14.

immediately accurately name the owner of the vehicle; (3) Plaintiff asserted his innocence and explained that he was transporting the load for Defendant Tate after being hired from a Craigslist advertisement; and (4) Plaintiff could provide a Bill of Lading dated October 25, 2019, and several text messages containing photographs of credit cards and a related discussion.[5]

Plaintiff cites no sufficiently similar cases to establish a clearly established constitutional violation in this context, and the Court is aware of none. In fact, although the Court makes no finding regarding probable cause, existing precedent seems to support a finding of probable cause—including of the scienter element of similar offenses—where an individual is found in possession of a stolen vehicle.[6] *See*, *e.g.*, *Henry v. Storey*, 658 F.3d 1235, 1239 (10th Cir. 2011) (officer "had probable cause to believe [the plaintiff] had stolen a vehicle" where the NCIC returned a "hit" on his vehicle's license plate, reporting it as stolen); *Miller v. City of Nichols Hills Police Dep't*, 42 F. App'x 212,

---

[5] The Court notes here a slight factual discrepancy: pursuant to Plaintiff's affidavit, Plaintiff offered but was not permitted to show fuel receipts, bills of lading, or other evidence until he arrived at the station. *Id*. at ¶¶ 19, 23. Viewed independently, this would lead the Court to conclude that Defendant Maese had not heard Plaintiff's full explanation or seen the additional evidence contained in Exhibits 1 through 4 at the time of the arrest. However, the State of New Mexico Incident Report dated November 8, 2019, states that Plaintiff provided a fairly detailed explanation for his possession of the vehicle prior to his arrest. ECF No. 22-7 at 3. Defendant Maese's affidavit states the same. ECF No. 10-1 at ¶ 8. Because these statements suggest that Defendant Maese knew the above information prior to the arrest, and because Plaintiff's affidavit leaves some room for doubt with respect to timing, the Court assumes *arguendo* that Defendant Maese had already heard Plaintiff's full explanation and seen the referenced documentation at the time of the arrest.

[6] Plaintiff purports to cite several cases in which possession of a stolen vehicle was *not* sufficient to establish probable cause. ECF No. 22 at 10–12. In fact, these cases largely support the proposition that while an individual's presence in the passenger seat of a stolen vehicle is not sufficient to establish probable cause, an individual's presence in the driver's seat generally is. *See*, *e.g.*, *Griffin v. City of Chicago*, 406 F. Supp. 2d 938, 945 (N.D. Ill. 2005); *United States v. Newman*, 265 F. Supp. 2d 1100, 1109 (D. Ariz. 2003); *Commonwealth v. Pridgett*, 116 N.E.3d 549, 552–53 (Mass. 2019). Although Plaintiff was not driving the truck when encountered by Defendant Maese, he was undisputedly in sole possession and, by his own admission, had been driving it.

216 (10th Cir. 2002) ("The NCIC report indicating that the vehicle had been reported as stolen, as relayed to the officers by the dispatcher, was sufficient to provide probable cause for the arrest."); *Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998) ("[W]e have held that a stolen vehicle report alone furnishes sufficient basis to arrest the driver."). Therefore, in the clearly established context, relevant precedent appears to support a finding that Defendant Maese had "more than a bare suspicion" of Plaintiff's guilt based on his possession of the vehicle. *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (quotation omitted).

Neither does relevant precedent appear to direct a finding that countervailing evidence—Plaintiff's narrative account, Bill of Lading, and text messages[7]—dispelled the existence of probable cause. Under existing caselaw, police officers are not required to accept a suspect's story, even if plausible, as proof of innocence. *See Spalsbury v. Sisson*, 250 F. App'x 238, 246 (10th Cir. 2007) ("'A policeman . . . is under no obligation to give any credence to a suspect's story,' and even a plausible explanation in no way 'require[s] the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.'" (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988)). And Plaintiff's documentation, though consistent with his narrative, was not conclusive of his innocence. *C.f. Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998) ("While officers may weigh the credibility of witnesses in making a probable cause determination, they may not ignore *available* and *undisputed* facts."

---

[7] Plaintiff further emphasizes that the vehicle was parked in plain view, that the vehicle still had its original license plates, that there was no evidence of forced entry, and that Plaintiff did not attempt to flee. ECF No. 22 at 14. The Court has considered these and all other facts in evidence; however, Plaintiff provides no published authority that any of these facts—singly or in combination—were sufficient to clearly establish the absence of probable cause.

(emphasis in original)). The Bill of Lading included a date, origin, and destination, but listed neither Plaintiff's name nor the license number of the truck. ECF No. 22-2. The text messages contained images of various credit cards and a discussion to the effect that they were being declined, but did not identify the recipient or establish the nature of the business relationship involved. *See* ECF Nos. 22-1, 22-3, 22-4. In sum, these documents did not corroborate Plaintiff's narrative to such an extent that his arrest—based on his possession of a reportedly stolen vehicle—constituted a violation of clearly established law.[8]

Because Plaintiff has not brought forth published cases, the Court finds that the right at issue was not clearly established and declines to reach the issue of actual probable cause at the time of arrest. *See Pearson*, 555 U.S. at 236.

Unreasonable Prosecution

Plaintiff next alleges that Defendant Maese violated his Fourth Amendment rights by initiating a prosecution against him without probable cause. Specifically, Plaintiff argues that Defendant Maese unconstitutionally failed to interview Defendant Chappas, Defendant Tate, or Plaintiff's father. ECF No. 22 at 14. He alleges these interviews would

---

[8] To the extent Plaintiff also argues that Defendant Maese was required to conduct additional investigation before making an arrest, this is not clearly established by existing precedent. Existing precedent regarding the probable cause standard "requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Romero*, 45 F.3d at 1476–77. The law does not, however, require officers "to interview alleged alibi witnesses [before an arrest] once probable cause is established." *Baptiste*, 147 F.3d at 1259 (citing *Romero*, 45 F.3d at 1476–77). Plaintiff cites no precedent clearly establishing Defendant Maese's duty to interview Defendant Walter Chappas (who was listed as the owner of the stolen vehicle), Defendant Keith Tate, or Plaintiff's father, or to conduct additional investigation. *See* ECF No. 22 at 14. The Court therefore finds no clearly established constitutional error in this respect.

have revealed that the truck was not stolen and that Plaintiff was, in fact, legally hired by

Mr. Tate.

To establish a claim for malicious prosecution[9] under § 1983, a plaintiff must show

that:

> (1) the defendant caused the plaintiff's continued confinement or
> prosecution; (2) the original action terminated in favor of the plaintiff; (3) no
> probable cause supported the original arrest, continued confinement, or
> prosecution; (4) the defendant acted with malice;[10] and (5) the plaintiff
> sustained damages.

*Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Plaintiff's claim rests on the premise that Defendant Maese had a constitutional

duty to investigate potentially exculpatory evidence prior to filing the criminal complaint.

Plaintiff does not, however, cite any cases to this effect. At this procedural stage, Plaintiff

bears the burden to show that the right at issue was clearly established. *See Kapinski*,

964 F.3d at 905. Plaintiff has failed to identify a "controlling case or robust consensus of

cases," *Wesby*, 138 S. Ct. at 590, finding a Fourth Amendment violation under factually

similar circumstances, and the Court has found none. Although a given law enforcement

officer may have a moral obligation to pursue potentially exculpatory information, the

Court cannot find that this is "the rare obvious case, where the unlawfulness of the

officer's conduct is sufficiently clear even though existing precedent does not address

---

[9] Although Plaintiff styles his second claim against Defendant Maese as one for "unreasonable prosecution," the Court construes it as the type of claim generally called "malicious prosecution." The Court is convinced that this was Plaintiff's intention based on his citation to *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155 (10th Cir. 2009), in the Complaint. ECF No. 1 at ¶ 33.

[10] "Malice may be inferred if a defendant causes the prosecution without arguable probable cause." *Stonecipher*, 759 F.3d at 1146.

similar circumstances." *McCoy v. Meyers*, 887 F.3d 1034, 1053 (10th Cir. 2018) (quoting *Wesby*, 138 S. Ct. at 590). Accordingly, the Court finds that no clearly established right was violated by Defendant Maese's initiation of criminal proceedings. So finding, the Court does not reach the question of whether probable cause existed for the prosecution. *See Pearson*, 555 U.S. at 236.[11]

Motion to Strike

Finally, the Court turns to Defendant Maese's Motion to Strike Parts of Affidavit of Proffered Expert Witness Brian Keith Wilkinson. ECF No. 26. Plaintiff submitted this affdaivit as an exhibit to his Response to the Motion for Summary Judgment. ECF. No. 22-9. Mr. Wilkinson states in his affidavit that he is a former police officer who attained the rank of Sergeant and has investigated a wide variety of criminal cases. *Id.* at ¶¶ 4–8. He offers several opinions related to Plaintiff's arrest and prosecution. *Id.* at ¶¶ 11–13. Defendant Maese objects specifically to paragraphs 11 through 13, which proffer opinions to the effect that Defendant Maese lacked probable cause; should have conducted further investigation, including contacting the victim; should have requested assistance from a detective; should have included all exculpatory evidence in the report; and should have "easily ascertained" that this was a "civil dispute" rather than a theft. *Id.*

Given the Court's dismissal on the clearly established prong of qualified immunity, these opinions are not relevant. While Mr. Wilkinson may be correct in his opinion that Defendant Maese should have taken additional investigative steps to ensure an innocent man was not jailed and charged with a felony, the issues presented in Defendant Maese's

[11] The undersigned likewise does not address Plaintiff's argument that qualified immunity should be abolished because, as Plaintiff recognizes, this Court lacks any such power.

Motion for Summary Judgment are legal rather than factual. "The objective legal reasonableness of [an officer]'s actions is a legal question," *Keylon*, 535 F.3d at 1218 (quoting *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003)), determined by reference to legal precedent rather than police procedures. Mr. Wilkinson's opinion about what Defendant Maese should have done, or about whether probable cause existed, is therefore not probative of Defendant Maese's entitlement to qualified immunity; that entitlement must be determined with reference to case law alone. Mr. Wilkinson's opinion, however valid, cannot mitigate the failure to bring forth particularized cases showing that the legal rights at issue were clearly established.

Because the disputed portions of Mr. Wilkinson's affidavit are not relevant to the Court's holding on summary judgment,[12] and because no claims relating to whether probable cause existed for Plaintiff's arrest remain viable in this case, the Motion to Strike is rendered moot.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant Justin Maese's Motion for Summary Judgment Based on Qualified Immunity (ECF No. 10) is **GRANTED**. Defendant Maese's Motion to Strike Parts of Affidavit of Proffered Expert Witness Brian Keith Wilkinson (ECF No. 26) is **FOUND AS MOOT**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[12] As set forth in previous sections, the Court considered the factual portions of Mr. Wilkinson's affidavit. Defendant Maese raised no objection to those statements in his Motion to Strike. *See* ECF No. 26.