**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JONATHAN WILKINSON,

      Plaintiff,

v.                                    Civ. No. 1:20-cv-00783 MIS/KRS

D & M ENERGY ASSOCIATES, LLC
d/b/a D & M ENERGY and
D & M ENERGY LLC,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

      THIS MATTER comes before the Court on Defendant D&M Energy Associates, LLC's ("D&M") Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 47. The Magistrate Judge allowed limited jurisdictional discovery, which concluded on December 8, 2021, and the parties subsequently completed their briefing. ECF Nos. 55, 59, 69. For the reasons that follow, the Court will GRANT the Motion in part and transfer Plaintiff's claims to the United States District Court for the Southern District of Texas.

## BACKGROUND

      Plaintiff filed suit in this Court on August 3, 2020, alleging claims under 42 U.S.C. § 1983[1] and state tort law. ECF No. 1. All claims arise out of Plaintiff's arrest and subsequent detention on October 30, 2019.

      Plaintiff alleged the following facts in his Complaint, as supplemented by his affidavit and exhibits. Plaintiff is a citizen of the State of Colorado, and D&M is a now-defunct limited liability company ("LLC") that was registered and principally

---

[1] The Court entered summary judgment for Defendant Justine Maese on November 19, 2021, disposing of Plaintiff's § 1983 claims. ECF No. 56.

conducted business in the State of Texas. *Id*. at ¶¶ 4, 8; ECF No. 47-1 at ¶ 2. Plaintiff's

alleged relationship[2] with D&M began on October 23, 2019, when former Defendant Keith

Tate[3] responded to Plaintiff's Craigslist advertisement for contract commercial driving

services. ECF No. 1 at ¶¶ 13, 14. Mr. Tate promised to pay and reimburse Plaintiff for

driving a pickup-rig ("the truck") from Cheyenne, Wyoming to Tacoma, Washington. *Id*. at

¶ 15. The truck was a 2017 Dodge Pickup with VIN 3C6UR5FL4HG679453 and Florida

license number IHXS94, donated by or leased from former Defendant Walter Chappas.

*Id*. at ¶¶ 11, 12. Although Mr. Tate provided the vehicle to Plaintiff, Mr. Chappas was its

registered owner at all relevant times. *Id*. at ¶ 11. Plaintiff alleges that Mr. Tate, D&M, and

former Defendant Environmental Services "were acting, at all times pertinent, within the

course and scope of a general partnership or joint venture." *Id*. at ¶ 10. He therefore refers

to them collectively as the "Partnership Defendants." *Id*.

Plaintiff proceeded with the contract driving arrangement, driving to Tacoma and

then to locations in Idaho and Utah. *Id*. at ¶ 15; ECF No. 59-1 at ¶¶ 12, 14. On

October 29, 2019, Plaintiff drove from Monticello, Utah to Jamestown, New Mexico. *Id*. at

¶¶ 14, 17. Upon arriving at the Flying J Fuel Station in Jamestown, Plaintiff was unable

to purchase fuel. Previously, Plaintiff had paid for fuel using a Comdata card issued to "D

---

[2] By written declaration of its owner and president, Fred Rake, D&M denies any knowledge of this transaction and denies that Keith Tate was authorized to act as its representative. *See* ECF No. 47-1 at ¶¶ 7, 14.

[3] In the Complaint, Plaintiff alleged that "Defendant Tate and Defendant Environmental Services responded" to the Craigslist advertisement. ECF No. 1 at ¶ 14. It appears from Plaintiff's exhibits that Mr. Tate was the "Managing Member" of Environmental Services. ECF No. 59-4 at 4. In his subsequent affidavit, Plaintiff stated that "I received a response to my Craigslist Ad from D&M Energy," with no mention of Environmental Services. ECF No. 59-1 at ¶ 4. At any rate, there is no dispute that Mr. Tate was the individual with whom Plaintiff communicated.

& M Energy" and provided to him by Mr. Tate.[4] ECF No. 59-8 at 10–11. The Comdata card now stopped working. Although Mr. Tate sent additional card numbers and authorized a "Comdata check," none were successful. ECF No. 59-1 at ¶ 17. Plaintiff finally gave up and fell asleep in the truck. *Id*. Unbeknownst to Plaintiff, the truck had been reported stolen on October 29, 2019, to Louisiana police. ECF No. 63-1. At 1:34 a.m. on October 30, 2019, Plaintiff was awakened by a New Mexico State Police officer knocking on the door of the truck. ECF No. 59-1 at ¶ 18. Plaintiff was arrested, incarcerated for approximately 36 hours, and charged with receiving or transferring a stolen motor vehicle. ECF No. 1 at ¶¶ 21–24. The charges were dismissed on November 13, 2019. *Id*. at ¶ 25.

Plaintiff brought claims for malicious abuse of process, intentional infliction of emotional distress, and negligence against the "Partnership Defendants." ECF No. 1 at ¶¶ 36–47. All claims against Mr. Chappas, Mr. Tate, and Environmental Services were settled and voluntarily dismissed. ECF Nos. 57, 73. D&M filed its Motion to Dismiss for Lack of Personal Jurisdiction on September 9, 2021. ECF No. 47. At Plaintiff's request, Magistrate Judge Sweazea permitted limited jurisdictional discovery, to conclude on December 8, 2021. ECF No. 55. Plaintiff subsequently filed a response with numerous exhibits. ECF No. 59. D&M filed a reply, attaching one exhibit.[5] ECF No. 69. Neither party requested an evidentiary hearing, and D&M's Motion is now before the Court.

---

[4] Plaintiff was never given a physical card, but Mr. Tate texted Plaintiff photos of the card so that he could manually enter the number at truck stops. ECF No. 59-1 at ¶ 7.

[5] The exhibit, originally attached to D&M's Motion in Opposition of Plaintiff and Chappas' Joint Motion to Dismiss (ECF No. 63), was incorporated by reference in D&M's reply. *See* ECF No. 69 at 5.

**LEGAL STANDARD**

A motion under Federal Rule of Civil Procedure 12(b)(2) challenges the existence of personal jurisdiction. To establish personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must show that (1) "jurisdiction is proper under the laws of the forum state," and (2) "the exercise of jurisdiction would not offend due process." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002); N.M. Stat. § 38-1-16 (2018). Therefore, the statutory inquiry collapses into the constitutional analysis. *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1279 (10th Cir. 2016).

The Due Process Clause allows for personal jurisdiction over a nonresident defendant "so long as there exist minimum contacts between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The requisite "minimum contacts" may be established in one of two ways. *Intercon*, 205 F.3d at 1247. First, the court may exercise "general jurisdiction" when a defendant is "essentially at home" in the forum state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021). General jurisdiction "extends to any and all claims brought against a defendant," but demands proportionally greater contacts with the forum state. *Id*. Second, the court may exercise "specific jurisdiction" over a nonresident defendant "only for claims related to the defendant's contacts with the forum State." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). Unlike general jurisdiction, specific jurisdiction does not apply to all claims against a given defendant. It

is proper only if "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'" *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Even if the plaintiff satisfies these requirements, "the defendant can defeat jurisdiction by presenting a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id*. (quoting *Burger King*, 471 U.S. at 477). Unreasonableness is assessed with respect to the following factors:

> (1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 909 (10th Cir. 2017) (quoting *Pro Axess, Inc. v. Orlux Distrib.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005)).

On a Rule 12(b)(2) motion, "[t]he plaintiff has the burden of establishing personal jurisdiction." *Id*. at 839. "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Behagen v. Amateur Basketball Assoc.*, 744 F.2d 731, 733 (10th Cir. 1984). The court takes as true "all well-pled (that is, plausible, non-conclusory, and non-speculative) facts" alleged in the complaint, unless they are contested by affidavit or other written materials. *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008); *see also Schrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011) ("[E]ven well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit," which may in turn be contradicted by

"specific averments, verified allegations, or other evidence sufficient to create a genuine issue of fact."). If the parties present contradicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *Behagen*, 744 F.2d at 733.

## DISCUSSION

### I.      General Jurisdiction

Plaintiff contends, without explanation, that "[t]he evidence produced in jurisdictional discovery would support a finding that this Court has general jurisdiction" over D&M. ECF No. 59 at 1. However, Plaintiff's arguments relate only to specific jurisdiction. The Court therefore need not address the issue. *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 n.2 (10th Cir. 2020) ("Because Dental Dynamics advances no arguments in favor of general personal jurisdiction, we treat specific personal jurisdiction as the *only* variant at issue."). Nevertheless, the Court has conducted a brief analysis and concludes there is no general jurisdiction over D&M.

A corporation is subject to general jurisdiction in its place of incorporation and its principal place of business. *Ford Motor Co.*, 141 S. Ct. at 1024. The Supreme Court has also left open the possibility that in "an exceptional case," a corporation might be "at home" elsewhere. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Courts have consistently applied the same analysis to limited liability companies. *See*, *e.g.*, *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 337 n.10 (5th Cir. 2020) ("[T]he entity type is not germane to this jurisdictional analysis; instead it is the company's domicile that merits attention."); *Bliss v. Change Healthcare Operations LLC*, 2021 U.S. Dist. LEXIS 33412, at *3 (W.D. Okla. Feb. 23, 2021) (collecting cases).

There is no dispute that D&M, while active, was formed and based in the State of Texas. ECF Nos. 1 at ¶ 8; 47-1 at ¶ 2. Nothing suggests this is the "exceptional case" in which general jurisdiction might be established on some other basis. The Complaint includes no allegations about the nature or extent of D&M's business dealings in New Mexico. The only evidence of D&M's activity in New Mexico is an email from Fred Rake, president and owner of D&M,[6] in which he summarized a prior discussion and stated: "I think it makes more sense for Randy Hauk to go up there and we let Randy E. stay here to help in TX and NM so Chris has multiple points of support."[7] ECF No. 59-5 at 1. This brief reference, standing alone, falls far short of the "continuous and systematic general business contacts" necessary to support general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 929 (2011) (quoting *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 414 (1984)). Therefore, the Court finds no general personal jurisdiction over D&M.

## II.    Specific Jurisdiction

When analyzing personal jurisdiction over tort-based claims, the court first determines whether there was "purposeful direction" toward the forum state according to the following elements: "(1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics*, 946 F.3d at 1231. Second, even after demonstrating that the defendant

---

[6] Plaintiff's exhibits show that Fred Rake was also the "President/CEO" of a company called GI Exec. Inc. *E.g.*, ECF No. 59-3 at 4. It is not always clear, therefore, whether he was acting on behalf of D&M or GI Exec. For purposes of Plaintiff's prima facie showing of personal jurisdiction, the Court assumes he was acting on behalf of D&M at all times.

[7] Fred Rake, conversely, declared that D&M "never conducted business in the state of New Mexico or engaged in business transactions in the state of New Mexico." ECF No. 47-1 at ¶ 3.

purposefully directed its activities toward the forum state, the plaintiff must show that the alleged injuries "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 472 (quoting *Helicopteros*, 466 U.S. at 414).

Upon review of the allegations, affidavits, and submitted exhibits, the Court finds no evidence of "purposeful direction" by D&M toward New Mexico. Plaintiff's injury, i.e., his arrest and detention, arise out of the allegedly false report that the truck was stolen. ECF No. 1 at ¶¶ 17, 18. The police report submitted as an exhibit by D&M reveals that Walter Chappas reported the truck stolen on October 29, 2019, to Louisiana police. ECF No. 63-1. Although Plaintiff summarily alleged in the Complaint that Mr. Chappas and D&M "were acting . . . within the course and scope of a general partnership or joint venture," ECF No. 1 at ¶ 10, there is no allegation about Mr. Chappas' specific involvement, and conclusory allegations will not suffice. *See*, *e.g.*, *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007) ("In order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy."). Plaintiff submitted evidence that an individual named "Caprice Chappas," the owner of "Griffon Oilfield Services LLC," executed a leasing agreement with "Dark Side Trucking LTD" on August 9, 2019,[8] and a Non Solicitation and Confidentiality Agreement with Environmental Services on September 19, 2019. ECF No. 59-4. The Court assumes, for purposes of Plaintiff's prima facie jurisdictional showing, that "Caprice Chappas" is an alias of Walter Chappas and that "Dark Side Leasing" is closely affiliated

---

[8] On this document, titled "Dark Side Leasing Notes," Caprice Chappas is listed as the "Truck Owner." ECF No. 59-4 at 1.

with D&M. Whatever the nature of their relationship, however, it is implausible that Mr. Chappas was acting in furtherance of their alleged "joint venture" when he reported the truck stolen, given that Mr. Tate—also alleged to be part of the joint venture—was in regular communication with Plaintiff and apprised of the truck's status and location.[9]

Furthermore, even assuming that Mr. Chappas was acting as part of the "joint venture" and that his conduct can be imputed to D&M, Plaintiff has not shown purposeful direction of conduct toward the State of New Mexico. The truck was reported stolen to Louisiana police on October 29, 2019. ECF No. 63-1. At the time of the report, law enforcement tracked the vehicle's location to Monticello, Utah. *Id*. Plaintiff's affidavit establishes that he traveled through Utah, Colorado, and New Mexico on that date, all while heading to Houston, Texas. ECF No. 59-1 at ¶¶ 15–17. Mr. Chappas did not report the vehicle stolen to New Mexico law enforcement, and neither he nor D&M could have known, or even expected, that Plaintiff would be apprehended in New Mexico. The contact with New Mexico was therefore only "random [and] fortuitous." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (finding no minimum contacts where the harm might have occurred "in California, Mississippi, or wherever else [the plaintiffs] might have traveled and found themselves wanting more money than they had"); *see also Dental Dynamics*, 946 F.3d at 1232 ("[T]he allegedly tortious conduct here is only incidental to the forum state."). In short, because there was no "knowledge that the brunt of the injury would be felt in the forum state," *Dudnikov*, 514 F.3d at 1072, the Court finds no purposeful direction of conduct by D&M toward New Mexico.

---

[9] In addition, it appears from the police report that Mr. Chappas accused Mr. Tate of stealing the truck. ECF No. 63-1 ("Further investigation and confirmation of the identity for Tate will be needed before an arrest warrant affidavit can be submitted.").

Plaintiff urges the Court, nonetheless, to find purposeful direction because "D&M was a member of the joint venture [that reported the truck stolen] and had directed business at New Mexico." ECF No. 59 at 9. The only evidence of business directed toward New Mexico is the email, referenced above, in which Fred Rake suggested they "let Randy E. stay here to help in TX and NM so Chris has multiple points of support." ECF No. 59-5 at 1. But it is not enough for a defendant to direct purposeful activities toward the forum state; the plaintiff's claims must also "arise out of or relate to" those activities. *XMission*, 955 F.3d at 840. "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284 (emphasis added). Whatever the nature of D&M's business dealings in New Mexico, they were neither causally connected nor closely related to Plaintiff's arrest.[10] Nothing suggests that Mr. Chappas' reporting the truck stolen was related to D&M's regular business dealings—whatever their nature and scope—in the State of New Mexico. *See*, *e.g.*, *XMission*, 955 at 850 (rejecting plaintiff's argument that personal jurisdiction could be based on the defendant's "$3 million in revenue from Utah customers" because there was no evidence that any of the revenue was generated by the offending emails at issue). Consequently, the Court finds no specific personal jurisdiction on the basis of D&M's regular business contacts with New Mexico.[11]

---

[10] Plaintiff points out that the Supreme Court recently rejected a strictly causation-based approach to personal jurisdiction. *See Ford Motor Co.*, 141 S. Ct. at 1026. However, the Supreme Court also made clear that "[i]n the sphere of personal jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* This Court finds that the present facts are widely distinguishable from those in *Ford Motor Co.* and that the requisite relationship has not been established.

[11] The facts that D&M "accept[ed] shipments necessarily routed through New Mexico," ECF No. 59 at 7, and that "Plaintiff's return trip brought him to New Mexico," *id.* at 8, are immaterial to the jurisdictional

III.     **Transfer**

Plaintiff argues that, with a finding of no personal jurisdiction, the Court should transfer this action to the United States District Court for the Southern District of Texas[12] pursuant to 28 U.S.C. § 1631. In the absence of jurisdiction, § 1631 provides that

> the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

*Id*. The district court enjoys "considerable discretion in deciding whether a § 1631 transfer would be appropriate." *United States v. Botefuhr*, 309 F.3d 1263, 1274 n.8 (10th Cir. 2002). Factors "warranting transfer rather than dismissal" include findings that (1) the new action would be time barred, (2) the claims are likely to have merit, and (3) the original action was filed in good faith, before the plaintiff realized or should have realized that the forum was improper. *Trujillo v. Williams*, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006).

Two of these factors are easily established here. As noted by D&M, it appears that a new action would likely be time barred.[13] ECF No. 69 at 9. The Court is also satisfied that Plaintiff's action was filed in good faith, before Plaintiff knew or should have known that the forum was improper. The remaining factor—whether Plaintiff's claims are likely

---

inquiry because the contacts are too attenuated to support personal jurisdiction. Otherwise, specific jurisdiction over transport companies like D&M would exist in virtually every United States jurisdiction for virtually any kind of tortious conduct.

[12] There is no dispute that general personal jurisdiction over D&M lies in the Southern District of Texas.

[13] D&M argues that transfer should be denied because "the relevant Texas statute of limitations for this matter has passed." ECF No. 69 at 9. But this factor (assuming, without deciding, that Texas law would apply to Plaintiff's claims) weighs in favor of transfer rather than dismissal.

to have merit—gives the Court some pause. As currently alleged, Plaintiff's claims against D&M for negligence and intentional infliction of emotional distress appear wholly conclusory. *See* ECF No. 1 at ¶¶ 41–47; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, the Complaint also alleges that (1) Plaintiff was contracted to drive the truck, (2) the truck was reported stolen, and (3) Plaintiff was arrested despite his innocence.  And, in spite of D&M's protestations, the exhibits submitted by Plaintiff are replete with evidence that D&M conducted extensive business with Mr. Tate.[14] The Court therefore does not find that Plaintiff's claims against D&M are "clearly doomed," *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000), and transfer to a proper forum is warranted.

### CONCLUSION

For the foregoing reasons, Defendant D&M Energy Associates, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 47) is **GRANTED IN PART**, and this action is **TRANSFERRED** pursuant to 28 U.S.C. § 1631 to the United States District Court for the Southern District of Texas. The Clerk of Court is directed to take the necessary actions to transfer the case.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[14] *See*, *e.g.*, ECF No. 59-5 at 3 ("GI Exec/D&M Energy AND Environmental Services wish to work together in securing transportation[.]"), 5 (October 9, 2019 email from Fred Rake to Mr. Tate stating "[t]he MOU on our joint venture will be done tomorrow and ready for signature on Thursday"), 14 (letter offering employment with GI Exec and Environmental Services' "joint venture"), 17 (October 29, 2019 email from Fred Rake referencing "Keith Tate, our partner in Louisiana").